IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.                              CRIMINAL CASE NO. 2:22-00091

LESLIE RUSSELL BURNEY

## MEMORANDUM OPINION AND ORDER

Before the court is defendant Leslie Russell Burney's motion to suppress evidence.  (ECF No. 57).  The court took the matter under advisement after a July 11, 2023 hearing.  For the following reasons, the motion is **DENIED**.

## I.   Background

Law enforcement officers recovered approximately seven pounds of methamphetamine from a backpack seized from the defendant after he led them on a high-speed chase on Interstate 77 through Jackson County, West Virginia.  He asks this court to exclude that evidence from trial, alleging that the officers violated his Fourth Amendment right against unreasonable searches and seizures when they (1) initiated the traffic stop under the guise of a pretextual traffic offense; and (2) searched his backpack before obtaining a search warrant.

At the motion hearing, the government presented three witnesses:  (1) Officer Aaron Cullen of the Ripley, West Virginia, Police Department, (2) Special Agent Ambra Dunn of the United States Drug Enforcement Administration, and (3) Detective

Seth Fisher of the Jackson County Sheriff's Office.  The
government also introduced dash-camera footage of the police
chase and a copy of the search warrant for the backpack.  Based
on this evidence, the court finds the following facts.

On the night of October 20, 2021, Officer Cullen and Agent
Dunn partnered for a drug interdiction operation along I-77 in
Ripley, which is a known drug-trafficking route.  During the
operation, the pair monitored south-bound traffic from Officer
Cullen's patrol vehicle.  Officer Cullen maintained the sole
discretion whether to stop a vehicle and Agent Dunn remained on
standby to process drug-crime evidence, should it be uncovered
during a stop.

At approximately 8:00 p.m., the defendant traveled past
Officer Cullen's patrol vehicle in a 2008 Nissan Altima marked
with Ohio license plates.  As the vehicle passed, Officer Cullen
announced "tag light!" to Agent Dunn to indicate that the
defendant's rear license plate was not properly illuminated.
Officer Cullen pulled the vehicle over and engaged the defendant
from the passenger-side window.  The defendant, however,
abruptly sped away as he handed Officer Cullen his
identification.

Officer Cullen pursued the defendant in a chase reaching
speeds of 120 miles per hour.  The defendant erratically swerved
off exits, reversed course through the median, and attempted to

2

strike Officer Cullen's police cruiser to evade him.
Eventually, the defendant drove his vehicle over an embankment
and fled on foot with a red backpack.  By this time, several
other officers had arrived on scene, including a K-9 named Hak
who very quickly subdued the defendant in the woods nearby.
Officer Cullen then arrested the defendant, and officers
recovered the backpack which had wrapped around the defendant's
ankle.

After concluding the arrest, Officer Cullen drafted a
narrative of the incident and passed it along to Detective
Fisher who used it in affidavits supporting search warrants for
the backpack and the defendant's vehicle.[1]  Within the narrative,
Officer Cullen recounted the events preceding the defendant's
arrest and stated that "[a]s officers came into contact with the
driver [after Hak subdued him], he had a red backpack wrapped
around his ankle.  The backpack was partially open and inside
the officers saw what they believed to be a small grocery bag
full of what they believed to be some sort of controlled
substance."  (ECF No. 62).

Along with Officer Cullen's narrative, Detective Fisher
stated in the affidavit, among other things, that (1)
"[I]nterstate 77 is a common route for the transportation of

---

[1]  The defendant does not challenge the search of his vehicle, so
this opinion addresses only the search warrant for the backpack.

controlled substances, the affiant believes that [the defendant]
fled from Patrolman Cullen because he was in possession of an
illegal substance[][,]" (2) "[a] primary reason for individuals
fleeing is that they are in possession of controlled
substances[,]" (3) "it is further believed by the affiant that
[the defendant] fled on foot while still in possession of said
substances in the backpack[,]" and (4) "[t]hrough the affiant's
experience, he knows that individuals who are just simply
eluding capture will not take an item with them unless they are
somehow invested in said item . . . .  This leads the affiant to
believe that the backpack contains incriminating evidence . . .
."  (ECF 66).

    Based on Officer Cullen's narrative and the other probable
cause evidence asserted in Detective Fisher's affidavit, the
Jackson County Magistrate found probable cause and issued a
search warrant for the backpack.  Inside, law enforcement
officers found approximately seven pounds of methamphetamine.
Based on this incident, a grand jury indicted the defendant on
one count of possessing with the intent to distribute 500 grams
or more of methamphetamine in violation of 21 U.S.C. §
841(a)(1).  (ECF 1).  This motion to suppress followed.

## II.  <u>Legal Standard</u>

    The court may exclude evidence obtained in violation of the
Fourth Amendment to the United States Constitution as a sanction

to deter future Fourth Amendment violations.  See Davis v. United States, 564 U.S. 229, 248 (2011).  The Fourth Amendment declares,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV (emphasis added).

When seeking to suppress evidence under the exclusionary rule, the defendant initially bears the burden of proof.  See United States v. Dickerson, 655 F.2d 559, 561 (4th Cir. 1981).  If, however, the defendant establishes a proper basis for the motion, the burden shifts to the government to prove the admissibility of the evidence by a preponderance of the evidence.  See United States v. Jones, No. 2:22-cr-00137, 2023 WL 2581999, at *3 (S.D.W. Va. Mar. 20, 2023) (citing United States v. Matlock, 415 U.S. 164, 177 n.14 (1974)).  The preponderance of the evidence standard requires only that the relevant facts be more likely true than not.  See United States v. Gibson, 309 F. App'x 754, 755 (4th Cir. 2009) (per curium) (citing United States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004)).

III. **Analysis**

a.  **The Traffic Stop**

The Supreme Court does not subject investigatory stops to the Warrant Clause of the Fourth Amendment and therefore does not require probable cause to initiate them.  See Terry v. Ohio, 392 U.S. 1, 20 (1968).  Instead, "to justify such an investigative stop, 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant . . . intrusion.'"  United States v. Coleman, 18 F.4th 131, 135-36 (4th Cir. 2021) (quoting Terry, 392 U.S. at 21).  This is a relatively low burden:  "The reasonable suspicion inquiry falls considerably short of 51% accuracy."  Id. at 136 (quoting Kansas v. Glover, 140 S. Ct. 1183, 1188 (2020)).  The Supreme Court has also explained that "[t]o be reasonable is not to be perfect[.]"  Glover, 140 S. Ct. at 1188 (quoting Heien v. North Carolina, 574 U.S. 54, 60 (2014)).

In this case, the evidence establishes that the defendant committed a traffic violation:  Officer Cullen testified that he stopped the defendant because one of his tag lights was out; Agent Dunn testified that Officer Cullen initiated the traffic stop because of the faulty light; and the government's dash-camera footage shows that one of the two tag lights was out and that the left side of the plate was dim.

6

West Virginia law requires a vehicle to have at least one "tail lamp" or "separate lamp" that illuminates the license plate with white light such that a person may read it from at least fifty feet away.  See W. Va. Code § 17C-15-5(c) (1951) ("[A] tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear.").  The court credits Officer Cullen's testimony, as corroborated by dash-camera footage, that he believed defendant's faulty tag light violated this statute. Because the defective tag light appeared to violate West Virginia law, the initial stop of the defendant's vehicle was lawful.  See, e.g., United States v. Lewis, F. App'x 170, 172 (4th Cir. Feb. 16, 2012)("Because a defective tag light violates N.C. Gen.Stat. § 20-129(d) (2011), we conclude that the district court did not err in finding the initial stop of Lewis' vehicle lawful."); United States v. Murchison, No. 3:19cr138-HEH, 2019 WL 6834316, at *2 (Dec. 13, 2019) ("[T]he officers' observation of a defective tag light on the vehicle being operated by Defendant justified the traffic stop for equipment violation.").

Based on the forgoing, the government shows by a preponderance of the evidence that Officer Cullen possessed

reasonable, articulable suspicion that the defendant committed a traffic violation and could lawfully conduct the traffic stop.[2]

The defendant argues in his motion that even with this reasonable, articulable suspicion, the officers used the traffic violation as a pretext to stop him to investigate for drug possession. At the hearing, the defendant's counsel suggested that Officer Cullen and Agent Dunn conducted a drug interdiction operation and were not truly interested in investigating traffic violations.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 809-10 (1996) (citing Delaware v. Prouse, 440 U.S. 648, 659 (1979)). "'[T]he actual motivations of the individual officers involved' and their '[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.'"

---

[2] Even if Officer Cullen was mistaken in his belief that the tag light violated the statute, the stop would not necessarily violate Terry. "[I]f an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact was reasonable." United States v. Arias, F. App'x 230, 232 (4th Cir. 2007) (citing United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003)). Officer Cullen's testimony and the dash-camera evidence show that any mistake of fact on Officer Cullen's part would have been reasonable. See United States v. Sarvis, No.: 4:23-CR-00041-JD, 2023 WL 4053055, at *2 (D.S.C. Jan. 16, 2023) ("[E]ven if Officer Perkins was mistaken regarding Sarvis's tag lights, he provided sufficient, credible testimony that would support a conclusion that such a mistake was reasonable.").

United States v. Wheatley, No. 2:22-cr-00225, 2023 WL 1113149, at *3 (S.D.W. Va. January 30, 2023) (quoting Whren, 517 U.S. at 813).  Under this purely objective approach, "when an officer observes a traffic offense or other unlawful conduct, he or she is justified in stopping the vehicle under the Fourth Amendment[,]" and this does not change if the officer may not have stopped the car but for some other hunch or inarticulable suspicion.  United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993).

Officer Cullen observed the defendant commit a traffic offense and was justified in stopping him, regardless of whether the law enforcement officers subjectively hoped to find evidence of other crimes.

The traffic stop complied with the Fourth Amendment.

**b.  The Search**

Regarding the search of the backpack, the defendant claims in his motion only that "at the scene the [d]efendant maintains he was asked specifically about the contents of the backpack, indicating that the officer had opened and searched the bag prior to obtaining a search warrant."  (ECF No. 57).  In response, the government concedes for the sake of argument that a search may have occurred at the scene.  Rather than contest the issue of whether an initial search occurred or ask the court to apply a warrant exception to it, the government insists that

9

the court consider the other evidence establishing probable cause and determine that (1) the police would have inevitably discovered the drugs by lawful means, or (2) would have discovered it from a source independent of the alleged initial search.

### 1. Inevitable Discovery

The Fourth Amendment's exclusionary rule prevents the government from using evidence obtained during an unlawful search.  See Utah v. Strieff, 579 U.S. 232, 237 (2016).  "But the significant costs of this rule have led us to deem it 'applicable only . . . where its deterrence benefits outweigh its substantial social costs.'"  Id. (quoting Hudson v. Michigan, 547 U.S. 586, 591 (2006)).  The exclusionary rule is, therefore, subject to several exceptions, including the inevitable discovery doctrine:  "The inevitable-discovery doctrine constitutes one such exception and allows the government to use information obtained from an otherwise unreasonable search if it can establish by a preponderance of the evidence that law enforcement would have 'ultimately or inevitably' discovered the evidence by 'lawful means.'"  United State v. Bullette, 854 F.3d 261, 265 (4th Cir. 2017) (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)).  The Supreme Court has explained that no rational basis exists for applying the

exclusionary rule when the government would have discovered the evidence but for the police misconduct:

> Fairness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place. However, if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings . . . .

Nix, 467 U.S. at 447.

"[T]he inevitable discovery rule may be applied even though the evidence validly obtained under a search warrant was previously uncovered in an illegal search." United States v. Whitehorn, 813 F.2d 646, 650 (4th Cir. 1987). "[A] court may apply the inevitable discovery exception only when it has a high level of confidence that the warrant in fact would have been issued and that the specific evidence in question would have been obtained by lawful means." United States v. Souza, 223 F.3d 1197, 1205 (10th Cir. 2000). "This remains true even if the search warrant is partially based on evidence discovered prematurely if, 'excluding the illegally obtained information, probable cause for the issuance of the warrant could still be found.'" United States v. McGill, No. 5:15-CR-326-BO-2, 2016 WL

11

1271680, at *3 (E.D.N.C. March 30, 2016) (quoting <u>United States</u>
<u>v. Apple</u>, 915 F.2d 899, 910 (4th Cir. 1990)).

 The United States Court of Appeals for the Fourth Circuit
has recently clarified that the inevitable discovery analysis
requires two elements.  "[I]nevitable discovery demands that the
prosecution prove by a preponderance of the evidence: first,
that police legally <u>could</u> have uncovered the evidence; and
second, that police <u>would</u> have done so."  <u>United States v.</u>
<u>Alston</u>, 941 F.3d 132, 138 (2019) (citing <u>United States v. Allen</u>,
159 F.3d 832, 840 (4th Cir. 1998)).  To conduct this analysis,
courts must necessarily rely on facts that did not occur and
determine whether the government would have inevitably
discovered the evidence by lawful means.  <u>See</u> <u>id</u>.

## A.  Could Discover Lawfully

 The government explains in its response brief that a
warrant could have issued based on the evidence establishing
probable cause other than the observations from the first
allegedly unlawful search.[3]  It argues that the defendant's

---

[3]  The government attaches to its brief a redacted version of the
search warrant affidavit for the defendant's backpack which
removes any reference to the evidence discovered in the first
allegedly unlawful search of the backpack.  (ECF No. 62).  The
government asks the court to consider the redacted version of
the affidavit as an example to show that probable cause existed
absent the first search.  The court finds this example useful in
its assessment of the non-tainted probable cause evidence.
Indeed, "[t]he ultimate inquiry on a motion to suppress evidence
seized pursuant to a warrant is not whether the underlying

choice to lead officers on a high-speed chase down a known drug trafficking route and the fact that he took the backpack with him when he fled on foot provided probable cause that the backpack contained contraband.

The defendant's counsel suggested at the motion hearing that there is nothing suspicious about driving on I-77 and that there are reasons the defendant may have fled from officers other than having drugs in his backpack.  So, he argues that probable cause did not exist, absent the on-the-scene observations of suspected drugs.

To satisfy the "could" element, the government must show that law enforcement officers could have used "lawful means" to discover the unlawfully obtained evidence.  See Alston, 941 F.3d at 138 (quoting Nix, 467 U.S. at 444).  For example, in Alston, police relied on an unlawful confession to recover contraband from a suspect's car.  See id. at 136.  The Fourth Circuit held that even without the unlawful confession, police could have discovered the contraband pursuant to the automobile exception to the warrant requirement based on the other probable cause evidence available to them.  See id.

_____

affidavit contained allegations based on illegally obtained evidence, but whether, putting aside all tainted allegations, the independent and lawful information stated in the affidavit suffices to show probable cause."  United States v. Giordano, 416 U.S. 505, 555 (1974).

Like the search conducted pursuant to the automobile exception in Alston, a search conducted pursuant to a valid warrant is a lawful means to discover evidence.  U.S. Const. amend. IV.  So, it follows that if Detective Fisher's search warrant affidavit establishes probable cause based on the evidence, other than that obtained from the allegedly unlawful conduct, the government could have discovered the evidence by lawful means.  See Whitehorn, 813 F.2d at 649 (applying inevitable discovery exception where search warrant affidavit established probable cause, even without reference to evidence obtained from unlawful search:  "the inclusion of this 'tainted' data does not invalidate the warrant.").[4]  The court turns now to whether probable cause supported a search warrant absent the allegedly tainted information from the first search.

Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such

---

[4]  Several district courts have followed Whitehorn's rationale in cases like this one.  See, e.g., United States v. Thompson, No. 2:09-cr-00064, 2012 WL 2375541, at *7 (S.D.W. Va. June 22, 2022) ("[E]ven after excising from the search warrant application all mention of the pistol, the warrant is still supported by substantial evidence of probable cause. The warrantless re-entry into the bathroom is, therefore, legally insignificant. Officers would have discovered all evidence in the bathroom pursuant to undoubtedly legal means approximately two hours later."); United States v. Lee, No. 7:18-CR-153-FL-1, 2020 WL 5587711, at *5-6 (E.D.N.C. Sept. 18, 2020) (denying motion to suppress where search warrant affidavit demonstrated probable cause for search even when excised information obtained in violation of Fourth Amendment).

activity."  Brown v. Lott, No. 21-6928, 2022 WL 2093849, at *1
(4th Cir. June 10, 2022) (quoting Illinois v. Gates, 462 U.S.
213, 243 n.13 (1983)).  In other words, the suspect must only
engage in conduct that warrants suspicion.  See United States v.
Orozco, 41 F.4th 403, 407 (4th Cir. 2022) (quoting United States
v. Gondres-Medrano, 3 F.4th 708, 713 n.1 (4th Cir. 2021)).  That
a defendant "might propose an innocent explanation for his
conduct does not defeat probable cause."  Orozco, 41 F.4th at
407 (citing United States v. Bosyk, 933 F.3d 319, 325 (4th Cir.
2019)).  Probable cause is "not a high bar."  Id.

    In Orozco, the Fourth Circuit explained the necessary
findings for probable cause when it determined that probable
cause supported search warrants for a defendant's phone and
Secure Digital ("SD") cards.  See id. at 405.  The court
conducted two inquiries to make the determination:  (1) whether
there was a "fair probability" that the defendant engaged in a
criminal activity and (2) whether a "substantial basis" existed
for believing evidence of the crime could be found on the item
to be searched.  Id. at 408-09.  As to the first inquiry, the
court determined that there was a fair probability that the
defendant engaged in drug trafficking because he acted nervously
when police officers pulled him over, had money stashed in a
hidden compartment in his car, and stated that someone paid him
to drive the car.  See id. at 409.  As to the second inquiry,

the court found that there was a substantial basis that evidence of drug trafficking would be found on the SD cards because the defendant hid them in his shoe and tried to destroy them when police discovered them.  See id.  And it found that there was a substantial basis that the defendant's phone contained evidence of drug trafficking because he used the phone for navigation when driving with drug money.  See id. at 410.

So, to determine whether probable cause supported a search warrant absent the alleged initial search, the court must determine whether (1) there was a fair probability that the defendant engaged in criminal activity and (2) whether there was a substantial basis to believe the backpack contained evidence of that criminal activity.

First, a fair probability existed that the defendant engaged in criminal activity because he desperately fled from police after being stopped for a traffic violation.  See Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); see also United States v. Cottingham, No. 1:15CR108, 2016 WL 484280, at *3 (N.D.W. Va. January 8, 2016) ("Defendant's subsequent flights leading police on a pursuit that lasted for most of the early morning hours is enough to justify probable cause.").  This is especially true when

16

considered with Detective Fisher's testimony that I-77 is a
known drug trafficking route and the fact that the defendant
fled on foot with the backpack.  Though there is nothing
inherently suspicious about traveling along a known drug
trafficking route, it may suggest criminal activity when
considered in the totality of the circumstances.  Gates, 462
U.S. at 243 (citing United States v. Mendenhall, 446 U.S. 544
(1980) (POWELL, J., concurring)) ("In addition to being a
popular vacation site, Florida is well-known as a source of
narcotics and other illegal drugs.").  The defendant's conduct
provided a fair probability that he was engaged in criminal
activity.

The court turns next to whether there was a substantial
basis connecting the backpack to the criminal activity.  The
court has little trouble drawing this connection.  Tellingly,
the defendant took the backpack with him when he fled from
police on foot.  As Detective Fisher testified, a bag would
generally slow a defendant's evasion and they would not take it
unless it contained something they wished to hide from police.
This conduct is akin to the suspect in Orozco who attempted to
destroy the SD cards before police could seize them; both acts
indicate a consciousness of guilt and attempt to hide
wrongdoing.  The court, therefore, finds that the defendant's

17

conduct also created a substantial basis that his backpack contained evidence of his criminal activity.

Probable cause existed absent the observations from the first alleged search, and the government <u>could</u> have obtained a lawful warrant regardless.

### B.  Would Discover Lawfully

The next prong of the inevitable discovery analysis requires the court to determine whether the government would have discovered the evidence absent the first allegedly unlawful search.  In this case, that question turns on whether the law enforcement officers would have sought a search warrant had they not viewed the contents of the bag before applying for one.

This determination requires no conjecture because Detective Fisher testified directly to the point.  <u>See</u> <u>Alston</u>, 941 F.3d at 139 (quoting <u>United States v. Thomas</u>, 955 F.2d 207, 209-10 (4th Cir. 1992) ("Concluding that discovery was inevitable here requires no tenuous 'string of conjecture.'").  He testified that he would have applied for a search warrant even if the officers did not observe the bag's likely contents beforehand. He reasoned that the defendant's conduct established probable cause to believe that the bag contained evidence of illegal activity and that the police would have searched the bag based on that conduct alone.  The court finds this testimony credible.

The government shows by a preponderance of the evidence that officers <u>would</u> have inevitably discovered the evidence had they not allegedly searched the bag before obtaining a warrant.[5]

## IV.   Conclusion

For the above reasons, the defendant's motion to suppress (ECF No. 57) is **DENIED.**

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record, the United States Marshal for the Southern District of West Virginia, and the Probation Office of this court.

**IT IS SO ORDERED** this 27th day of July, 2023.

ENTER:

David A. Faber
Senior United States District Judge

---

[5]   The government also contends that the independent source doctrine saves the allegedly unlawful search of the defendant's backpack.  The court need not address this argument since the inevitable discovery doctrine applies.  The court briefly notes that the independent source doctrine is "closely related to the inevitable discovery doctrine" but does not apply unless the separate, lawful source is wholly independent of the taint of the unlawful search.  <u>Nix</u>, 467 U.S. at 443.  The Fourth Circuit has explained that when an unlawful search precedes a search warrant, the independent source doctrine only applies if the warrant omits information discovered from the first search. <u>United States v. Bullard</u>, 645 F.3d 237, 244 (4th Cir. 2011).  In this case, the warrant contained Officer Cullen's narrative which discussed his observations from the alleged illegal search of the backpack.  So, the independent source doctrine does not apply.